# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **TERRANCE MITCHELL,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04CV1068MLM |
| ) | |
| **JAMES LITTLE, et al.,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Amended Motion for Summary Judgment filed by Defendants James Little, Donnell Walters, Theo Buford, and Joseph Lehman. Doc. 60. Plaintiff filed a Response.[1] Doc. 63. Defendants filed a Reply. Doc. 64. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 32.

## FACTS[2]

The matter under consideration arises from Plaintiff's arrest on November 7, 2003. Plaintiff alleges in his Second Amended Complaint, pursuant to 42 U.S.C. § 1983, claims of excessive force and failure to prevent use of excessive force in violation of the Fourth Amendment and a State law battery claim against Defendants Police Officers Joseph Lehman, James Little, Donnell Walters and

---

[1] In his Response to the Amended Motion for Summary Judgment Plaintiff incorporates arguments made in his Response to Defendants' original Motion for Summary Judgment. The court will, therefore, consider exhibits attached to Plaintiff's Response to Defendants' original Motion for Summary Judgment.

[2] The facts are undisputed unless otherwise stated.

Theo Buford. Doc. 55. On November 7, 2003, Defendants Police Officers James Little, Donnell Walters, Theo Buford, and Joseph Lehman were employed by the St. Louis Metropolitan Police Department. Plaintiff testified in his deposition that he was first arrested when he was seventeen years old and that he has been arrested by the City of St. Louis Police Department too many times "to count" and that he was arrested "maybe one hundred times" and "maybe fifty times." Pl. Dep., 134-35. Officer Little arrested Plaintiff on an occasion prior to the incident involved in this matter and Plaintiff knew Officers Little and Walters prior to his arrest on November 7, 2003.

A Metropolitan Police Incident Report police report, prepared by Officer James Little, states that Officer Michael Hammond and Officer Little responded in separate vehicles to a report of "Burglars in the Building" at St. Matthew the Apostle Catholic Church and that upon the arrival of Officer Little Father Mark McKenzie listed missing items from the church living quarters and office. Doc. 60, Ex. C. The Incident Report further states that the office on the first floor and several rooms on the second floor were ransacked; that Officer O'Brien was contacted and responded to process the scene; that investigation revealed that car keys belonging to victim Brian Christopher, who resided at the church residence, keys to the church, and keys to the church's 1998 Ford Escort, as well as the 1998 Ford Escort, were all missing; that a description of the car was broadcast; that shortly after the broadcast Officer Walters observed the described vehicle traveling south on Lambdin; that Officer Walters activated his roof lights and attempted to curb the vehicle; that Plaintiff refused to curb the vehicle he was driving; that Plaintiff then drove on a curb striking a tree; that Plaintiff then abandoned the vehicle and ran towards Labadie through vacant lots; that Officer Walters then took Plaintiff into custody "without further incident"; that Plaintiff stated to Officer Walters that he knew "it was wrong to break into the church"; that Officer Little then placed Plaintiff under arrest; that Plaintiff was

2

conveyed to the hospital for a small laceration which injury Plaintiff suffered from a fall to the ground during his capture ; and that Plaintiff was accompanied on his trip to the hospital by Officer Buford. The report says that Officer Lehman also responded to the scene. Doc. 60, Ex. C.

Plaintiff does not dispute that on November 7, 2003, he was fleeing from police in a stolen car when he ran over a curb and hit a small tree; that after hitting the small tree Plaintiff exited from the car and started running from police on foot; that he ran through a parking lot; and that after a brief foot chase, which took approximately two minutes, Plaintiff was captured by police in a parking lot near Labadie Avenue. Plaintiff testified in his deposition that Officer O'Brien initially chased him; that he ran faster and got away from Officer O'Brien; that he was cut off by Officer Walters; that Officer Walters pulled his car up and got out of the car with his gun drawn; that Officer Walters told him to get down and spread his hands; that Plaintiff then went down on his knees and laid down on his stomach; and that Officer Walters handcuffed him. Pl. Dep., 52-56, 58-60. Plaintiff further testified that he then looked up and saw Officer O'Brien running toward him; that Officer O'Brien "came like flying raising his knee to drop it on [Plaintiff's] face"; that Officer O'Brien hit him on the right side of his face, around his eye and cheekbone; that he did this "about once or twice, I don't know"; that while he was doing this Officer O'Brien said something to the effect of "got your ass or something like that"; that Officer Walters was present when Officer O'Brien was hitting him; that Officers, who "had to be O'Brien and Walters" then scraped Plaintiff's face on the concrete; that they grabbed his hair and his head "slamming my head like that, quick shifts like letting go, doing it and saying names like you piece of shit and started grabbing and doing it real quick"; that while this was taking place Officer Walters was on Plaintiff's back with his knee on Plaintiff's back; that Officer Little then kicked Plaintiff in the head; that Plaintiff was then kicked in the ribs; that Plaintiff then told

3

the officers that he cold not feel his legs, although this was not true; and that an ambulance was then called. Pl. Dep. at 60-65, 69-73.

In his deposition Plaintiff did not mention Officer Lehman by name as a participant in his apprehension and/or arrest. In his Second Amended Complaint Plaintiff alleges that upon arriving at the scene after Plaintiff was handcuffed Officer Lehman banged his knee into Plaintiff's left side and that Officer Lehman banged Plaintiff's head into the concrete. In his Response to Defendants' Statement of Undisputed Facts, Plaintiff contends that a "white" officer physically abused him and that the evidence suggests that Officer Lehman is this "white" officer. Doc. 63, Pl. Resp. to Def. Facts, ¶ 23.[3]

It is undisputed that an ambulance arrived at the parking lot where the alleged abuse took place and that Plaintiff was transported to the hospital in the company of Officer Buford.[4] Officer Walters testified that he walked Plaintiff to the ambulance. Walters Dep. at 26. Officer Little testified, and Plaintiff denies, that when he arrived at the scene Plaintiff was inside the ambulance. In regard to Officer Buford, Plaintiff states that Officer Lehman's testimony puts Officer Buford at the arrest scene and that therefore, Buford had the opportunity to beat Plaintiff or witness Plaintiff's beating. Plaintiff does not allege in his Second Amended Complaint nor does he state in his Response to the Amended Motion for Summary Judgment that Officer Buford actually did beat or physically abuse

---

[3] The court notes that in his deposition Plaintiff stated that the white officer who chased him and hit him after he was handcuffed was Officer O'Brien. Pl. Dep. at 53, 57. Officer O'Brien who was originally named as a defendant in this lawsuit is not named as a defendant in Plaintiff's Second Amended Complaint.

[4] It is not clear if Officer Buford was in the ambulance or if he followed the ambulance to the hospital.

4

him. Plaintiff does allege in his Second Amended Complaint that Officer Buford was present when the alleged beating took place.

The Incident Report describes Plaintiff's injury as a small laceration to the rear of his head and states that Plaintiff was treated and released with several staples to the rear of his head along with a notation of "fit for confinement." Doc. 60, Ex. C. Records of the City of St. Louis Emergency Medical Services reflect that Plaintiff had a half inch cut on his skull. Doc. 50, Ex. J. A doctor who treated Plaintiff in the emergency room testified in his deposition that Plaintiff complained of face and neck pain; that the doctor's physical findings included right check bleeding and oozing; and that the doctor repaired a laceration on Plaintiff's scalp with either sutures or staples. Doc. 50, Ex. H at 57, 63-64. Plaintiff has submitted an affidavit from a doctor who reviewed Plaintiff's medical records and who opined that Plaintiff's scalp laceration is consistent with being kicked in the head and not consistent with a fall. The doctor further opined that injuries which Plaintiff sustained to his right and left cheeks are consistent with having his face forcibly rubbed against or pushed into a hard, rough surface such as a cement sidewalk and that Plaintiff's injuries are not consistent with a fall. Doc. 50, Ex. L. Plaintiff's mug shot dated November 7, 2003, shows bruises on his face. Doc. 50, Ex. K.

**STANDARD FOR SUMMARY JUDGMENT**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. "'In order to survive a motion for summary judgment under § 1983, the plaintiff must raise a genuine issue of material fact as to whether (1) the defendants acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right.'" Kuha v. City of Minnetonka, 365 F.3d 590 (8th Cir. 2004) (quoting Cooksey v. Boyer, 289 F.3d 513, 515 (8th Cir. 2002). With these principles in mind, the court turns to an analysis of Defendants' motions.

**LEGAL FRAMEWORK**

**A.      Excessive Force Used in the Course of an Arrest:**

In Kuha, 365 F.3d at 597, the Eighth Circuit articulated the standard for determining whether force is excessive and held that:

> [The plaintiff's] excessive force claim is analyzed under the Fourth Amendment's "objective reasonableness" standard. See Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (clarifying that "all claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard") (emphasis in original). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), quoted in Graham, 490 U.S. at 396, 109 S.Ct. 1865. "[H]owever, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396, 109 S.Ct. 1865 (citing Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), characterizing the inquiry as "whether the totality of the circumstances justifie[s] a particular sort of ... seizure"). In sum, "the nature and quality of the intrusion on the individual's Fourth Amendment interests [must be balanced] against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), quoted in Garner, 471 U.S. at 8, 105 S.Ct. 1694.
>
> "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396, 109 S.Ct. 1865 (citing Terry v. Ohio, 392 U.S. 1, 20-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Id. at 396-97, 109 S.Ct. 1865. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397, 109 S.Ct. 1865 (citations omitted). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id. (citations omitted).
>
> In reviewing [the plaintiff's] claims, the substantive law must be applied in the

context of a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, the relevant inquiry is [the plaintiff] presented enough proof in support of his claim that a jury could properly find that the degree of force used against him was not "objectively reasonable."

Personal involvement is a prerequisite to liability under 42 U.S.C. § 1983. Martin v. Sergent, 780 F.2d 1334, 1337 (8th Cir.1985). A plaintiff must show that the defendant had knowledge of or connection with the allegedly unlawful conduct. Id. Indeed, a *respondeat superior* theory does not apply in § 1983 suits for damages. Id. "[A] §1983 action will not lie against police supervisory officers for failure to prevent police misconduct, absent a showing of direct responsibility for the improper action." Harris v. Pirch, 677 F.2d 681, 685 (8th Cir. 1982) (citing Rizzo v. Goode, 423 U.S. 362 (1976); Kostka v. Hogg, 560 F.2d 37 (1st Cir. 1977)). More than a causal connection between the misconduct complained of and the official sued is required for § 1983 claim. Id. "Liability may be found only if there is personal involvement of the officer being sued." Id. (citing Watson v.Interstate Fire & Cas. Co., 611 F.2d 120, 123 (5th Cir. 1980)).

The Eighth Circuit has recognized the police officers can be found to be deliberately indifference where they fail to intervene in the use of unnecessary force by other officers. Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994) (holding that a cause of action exists where a defendant was deliberately indifferent when he failed to intervene after officers held the plaintiff down and began choking him) (citing Buckner v. Hollins, 983 F.2d 119, 122-23 (8th Cir. 1993)). See also Estate of Davis v. Delo, 115 F.3d 1388, 1395 (8th Cir. 1997) ("A prison official may be liable for failure to protect an inmate from a use of excessive force if he is deliberately indifferent to a substantial risk of serious harm to an inmate.") (citations omitted); Smith v. Mensinger, 293 F.3d 641, 650 (8th Cir.2002) ("[A] police officer has a duty to take reasonable steps to protect a victim from another

officer's use of excessive force, even if the excessive force is employed by a superior.") (citing Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir.1986) (holding that an officer is only liable if there is a realistic and reasonable opportunity to intervene); Byrd v. Brishke, 466 F.2d 466 F2d 6, 11 (7th Cir. 1972) (holding that liability for failure to intervene exists only if the beating occurred in the officer's presence or was otherwise within his knowledge); Putman v. Gerloff, 639 F.2d 415, 523-24 (8th Cir. 1981) (holding that liability exists only if the non-intervening officer saw the beating or had time to reach the offending officer). Upon finding prison officials liable for failing to protect an inmate in Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388, 1395 (8th Cir. 1997), the court noted that it was proper to consider the proximity of the officers to the officer who allegedly used excessive force, the nature of the officer's actions, whether there was a substantial risk of serious harm to the inmate, the inmate's actual injuries, and whether any of the officials reported the inmate's injuries in their use of force reports. The court concluded that credible evidence established that the prison officials observed another officer striking the inmate "yet did nothing to protect him from the substantial risk of serious harm posed" by the officer's blows. Id.

**B.     Qualified Immunity**:

Qualified immunity protects a government official from suit when his or her conduct does not "'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sexton v. Martin, 210 F.3d 905, 909 (8th Cir. 2000) (quoting Harlow v. Fitzgerald, 475 U.S. 800, 818 (1982)). In Saucier v. Katz, 533 U.S. 194 (2001), the United States Supreme Court addressed the requisites of a qualified immunity defense. The Court held that the "threshold question" in a qualified immunity inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right." Id.

at 201. The Court continued to state that:

> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established. This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition.

Id.

The Eighth Circuit has explained that "[t]o withstand a claim of qualified immunity at the summary judgment stage, a plaintiff must assert a violation of a constitutional or statutory right; that the right must have been clearly established at the time of the violation; and, given the facts most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right.'" Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999) (citation omitted). If the plaintiff establishes these elements, then the court must determine whether there is a genuine issue of material fact as to whether a reasonable governmental official would have known that his or her course of conduct violated the constitutional right, which allegedly was violated. Murphy v. State of Arkansas, 127 F.3d 750, 755 (8th Cir. 1997) ("[T]he relevant question at this stage of the litigation is whether the facts of record in the light most favorable to [the plaintiff] could be found to constitute a violation of his clearly established equal protection rights."). The Eighth Circuit has "taken a broad view of what constitutes 'clearly established law' for purposes of a qualified immunity inquiry." Sexton, 210 F.3d at 909.

"Qualified immunity is a defense only against a claim in one's individual capacity." Bankhead v. Knickrehm, 360 F.3d 839, 844 (8th Cir. 2004) (citing Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir.1999)). Qualified immunity is not a consideration where public officials are sued

in their official capacity because "[s]uits against public employees in their official capacity are the legal equivalent of suits against the governmental entity itself." Id. (citing Buford v. Runyon, 160 F.3d 1199, 1201 n. 3 (8th Cir.1998) (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985)). The Eighth Circuit holds that plaintiffs must specify if they are suing public employee defendants in their individual capacities. See Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989). **C. Battery Under Missouri Law:**

Under Missouri law a battery is an intended, offensive bodily contact with another. Geiger v. Bowersox, 974 S.W.2d 513, 516 (Mo. Ct. App. 1998). Intent is a requisite element of a claim of battery. Id. A police officer is liable for damages for battery during the course of an arrest only when in the performance of his duty in making the arrest "he uses more force than is reasonably necessary for its accomplishment. This being true, it devolves upon the plaintiff to prove not only that the officer touched him in making the arrest, but that he used more force thereabout than was reasonably necessary to effect the arrest." Neal v. Helbling, 726 S.W.2d 483, 487 (Mo. Ct. App. 1986).

**D.     Official Immunity and the Public Duty Doctrine under Missouri Law:**

In MuGuckin v. City of St. Louis, 910 S.W.2d 842, 844 (Mo. Ct. App. 1995), the court held

> The doctrine of official immunity is well established in Missouri law. Jackson v. City of Wentzville, 844 S.W.2d 585, 586 (Mo.App.E.D.1993). Official immunity protects a public officer from liability for discretionary acts performed in the course of his or her official duties. Kanagawa v. State by and through Freeman, 685 S.W.2d 831, 835 (Mo. banc 1985). Whether an act is discretionary depends on whether the act "necessarily requires 'the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether an act should be done or a course pursued.'" Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo. banc 1984) (citation omitted). "'Discretion' relates not so much to the exercise of naked and unrestrained power as to the exercise of judgment." Sherrill v. Wilson, 653 S.W.2d 661, 667 (Mo. banc 1983). In other words, "[d]iscretion and judgment are synonymous." Green v. Denison, 738 S.W.2d 861, 865 (Mo. banc 1987). This is opposed to an act that is ministerial, which an officer is required to perform in a prescribed manner, as

11

mandated by legal authority, without regard to his own judgment. Rustici, 673 S.W.2d at 769.

> An officer is shielded from liability for negligent acts committed by him while he was acting in a discretionary capacity, but not from those occurring while he was acting ministerially. Green, 738 S.W.2d at 865. The character of official immunity is such that it defines the duty the defendant officer owes to the plaintiff. Id. See also, Sherrill, 653 S.W.2d 661. The policy behind the doctrine's application considers that an officer should not have the fear of personal liability clouding his judgment when making decisions affecting the safety and welfare of the public. Green, 738 S.W.2d at 865. Official immunity, however, only shields the public employee, and affords no protection to the municipality.

See also Barthelette v. Sanders, 756 S.W.2d 536, 537 (Mo. 1988).

## DISCUSSION

### A.  Use of Excessive Force Against Plaintiff in Violation of § 1983:

Defendants argue that summary judgment should be granted in their favor because the undisputed facts establish that they did not use excessive force against Plaintiff in violation of his rights under the Fourth Amendment and that, therefore, Plaintiff's cause of action pursuant to § 1983 must fail.[5]  Plaintiff argues to the contrary.

The court first notes that according to Plaintiff's deposition testimony, upon being chased he

---

[5] In their Reply Defendants contend that there are no genuine issues of material fact because Plaintiff's deposition testimony in regard to the roles individual officers played in his alleged abuse differ from the allegations of his Second Amended Complaint and statements made in support of his Response to the Amended Motion for Summary Judgment. It is well established, however, that a plaintiff alleging a violation of § 1983 based on the use of excessive force during an arrest is not required to identify in his complaint the officers involved in the alleged violation. Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985). It is anticipated that under such circumstances a plaintiff will learn through discovery the identities of the officers. Id. Pleadings are sufficient if the complaint makes allegations specific enough to permit the identify of the defendants to be ascertained after reasonable discovery. Id. As such, Plaintiff's claims of the excessive use of force are not defeated because his deposition testimony differs from statements which he now makes in opposition to Defendants' Amended Motion for Summary Judgment.

12

stopped running from officers; that upon doing so he did not resist being handcuffed or otherwise resist; that after he was handcuffed and laying face down in the parking lot the Defendant Officers physically abused him by kicking and hitting him; and that he sustained injuries as a result of the physical abuse on the part of Defendant Officers. Plaintiff has submitted the affidavit of a doctor who has opined that the laceration which Plaintiff sustained was consistent with Plaintiff's being kicked in the head and not consistent with a fall by a person who was running. The doctor also opined that the abrasion which Plaintiff sustained on his right check and the bruise on his left cheek are consistent with Plaintiff's having his face forcibly rubbed against or pushed into a hard rough surface such as a cement sidewalk and that these injuries are not consistent with a fall. Doc. 63, Ex. L. On the other hand, Defendants submit deposition testimony stating that Plaintiff was not kicked or struck by officers and that during his apprehension he injured himself. Indeed, the Incident Report states that Plaintiff had a small laceration to his head and that he suffered this injury during a fall to the ground during his capture. In the event Plaintiff did not resist being handcuffed and he did not resist officers after he stopped running and in the event despite this conduct on the part of Plaintiff, officers hit and/or kicked Plaintiff, the force used by officers arguably would be excessive as it was not necessary. Kuha, 365 F.3d at 597. On the other hand, if Plaintiff was handcuffed after running from officers and if Plaintiff was injured as a result of his falling to the ground during his apprehension as attested to by Defendants, the force used against Plaintiff arguably was not excessive. Id. Thus, the court finds that there is genuine issue of material fact as to whether excessive force in violation of § 1983 was used against Plaintiff during his arrest.

In regard to the role that each of the named Officer Defendants played in Plaintiff's apprehension and arrest, there are numerous issues of material fact as the testimony of the Defendant

Officers, the Incident Report, the allegations of Plaintiff's Second Amended Complaint and Plaintiff's testimony are inconsistent. For example, Plaintiff alleges in his Second Amended Complaint that after he stopped running pursuant to Officer Walters' instructions, it was Officer Walters who handcuffed him; that upon arriving on the scene Officer Lehman banged his knee into the left side of Plaintiff's face; that Officer Lehman and Officer Walters then took Plaintiff's head and banged it on the concrete; and that Officer Little kicked Plaintiff in the head. Officer Walters, however, testified in his deposition when he arrived on the scene Plaintiff was on the ground and on his stomach, that he was being handcuffed, and that Officer Walters did not hit Plaintiff. Doc. 60, Ex. D at 27-28.

Plaintiff contends that Officer Lehman is the "white officer" who beat him but Officer Lehman testified in his deposition that when he arrived at the scene Plaintiff was already bleeding. In regard to Officer Little, Plaintiff testified that Officer Little kicked him after he had been handcuffed but Officer Little testified in his deposition that when he arrived at the scene Plaintiff was already inside the ambulance and that he went inside of the ambulance to read Plaintiff his rights. Doc. 60, Ex. E at 43. The court finds, therefore, that there are genuine issues of material fact in regard to Plaintiff's allegations that Officers Little, Walters, and Lehman used excessive force in the course of Plaintiff's apprehension in violation of § 1983.

In support of Plaintiff's opposition to the Motion for Summary Judgment Plaintiff states that Officer Lehman's testimony puts Officer Buford at the arrest scene and that, "therefore, Buford had the *opportunity* to beat [Plaintiff]." Doc. 63 at 6 (emphasis added). Plaintiff further states that according to Officer Lehman's testimony, Officer Buford must have arrived shortly after Officer Walters. In his Second Amended Complaint Plaintiff does not name Officer Buford as one of the officers who allegedly used physical force against him. Officer Buford, moreover, testified in his

deposition that when he arrived at the scene Plaintiff had already been detained, that he was already in the back of the cruiser; that Officer Buford was told to take Plaintiff to the hospital; and that he walked Plaintiff to the ambulance. Doc. 60, Ex. G at 26-27. Plaintiff does not allege specific conduct on the part of Officer Buford which can be characterized as physical force nor does Plaintiff's testimony suggest that Officer Buford used any physical force against Plaintiff. As such, to the extent Plaintiff alleges excessive force pursuant to § 1983 on the part of Officer Buford, the court finds that the undisputed facts establish that Officer Buford did not use excessive force against Plaintiff and that Defendants' Motion for Summary Judgment should be granted in this regard.

In regard to Plaintiff's allegation that the Defendant Officers did not stop the alleged abuse of Plaintiff even though they had the opportunity to do so, the court notes that Plaintiff alleges that Officer Walters was present when Officer Lehman allegedly abused him; that Officer Lehman was present when Officer Walters allegedly abused him; that Officer Buford was at the scene; and that the other officers were present when Officer Little allegedly kicked Plaintiff. Not only do the Defendant Officers deny using physical force against Plaintiff but Officer Buford testified that he was not even present at the scene until Plaintiff was inside of the cruiser. The court finds, therefore, that there are genuine issues of material fact in regard to whether Officers Little, Walters, Lehman, and Buford did not stop the alleged excessive force against Plaintiff and whether they had an opportunity to do so. As such, the court further finds that Defendants' Motion for Summary Judgment should be denied in this regard.

As stated above, qualified immunity is a defense only against suit in a public official's individual capacity. Plaintiff in the matter under consideration specifies that he is suing the Defendant Officers in their individual capacities. Plaintiff has alleged that Defendant Officers used excessive

force against him in violation of the Fourth Amendment because although he did not resist arrest the Defendant Officers kicked and/or beat him after he was handcuffed and on the ground. The court finds that Plaintiff has met his burden to establish that the constitutional right which he asserts is clearly established and that a reasonable police officer would have known that the Fourth Amendment prohibits the use of excessive force. Mettler, 165 F.3d at 1202. Given the disputed facts in a light most favorable to Plaintiff for purposes of Defendants' claiming qualified immunity at the summary judgment stage, the court finds that the alleged conduct of the Defendant Officers could be found to constitute a violation of clearly established Fourth Amendment rights. Murphy, 127 F.3d at 755. The court further finds, therefore, that Defendant Officers are not entitled to qualified immunity. See Saucier, 533 U.S. at 201; Mettler, 165 F.3d at 1202.

Further, based on the above described disputed material facts, the court finds that there are disputed material facts in regard to Plaintiff's claim that Defendant Officers Lehman, Little, and Walters had intended offensive bodily contact with Plaintiff. As such, the court finds that Defendants' Amended Motion for Summary Judgment should be denied in regard to Plaintiff's claim of battery under Missouri law against Defendant Officers Lehman, Little and Walters. See Geiger, 974 S.W.2d at 516. As the undisputed facts establish, however, that Officer Buford did not have intended offensive bodily contact with Plaintiff at the time of Plaintiff's apprehension and arrest, the court finds that summary judgement should be granted in favor of Defendants in regard to Plaintiff's claim of battery under Missouri law on the part of Officer Buford. See Geiger, 974 S.W.2d at 516.

Additionally, based on the above described disputed facts, the court finds that there are genuine issues of material fact in regard to Defendants' claim in their Amended Motion for Summary Judgment that they are shielded from liability under Missouri law on the basis of official immunity and

16

the public duty rule. See Barthetlette, 756 S.W.2d at 537. As such, the court finds that Defendants' Amended Motion for Summary Judgment should be denied to the extent they allege that they are shielded from liability under Missouri law on the basis of official immunity and the public duty rule.

## CONCLUSION

The court finds that the undisputed facts establish that Officer Buford did not use excessive force in violation of § 1983 against Plaintiff, that he is not liable for battery against Plaintiff, and that Defendants' Amended Motion for Summary Judgment should be granted in this regard. The court further finds that there are genuine issues of material fact in regard to Plaintiff's allegation that Officers Lehman, Little and Walters used excessive force in violation of § 1983 and in regard to Plaintiff's allegation that Officers Lehman, Little, Walters and Buford failed to stop the alleged use of excessive force against Plaintiff even though they had the opportunity to do so. The court also finds that there are genuine issues of material fact in regard to Defendants' claim that they are not liable under §1983 because they have qualified immunity and that they are not liable for battery under State law based on official immunity and the public duty rule. The court finds, therefore, Defendants' Amended Motion for Summary Judgment should be denied in this regard. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Amended Motion for Summary Judgment is **DENIED,** in part**,** and **GRANTED,** in part; [Doc. 60]

**IT IS FURTHER ORDERED** that Defendants' Amended Motion for Summary Judgment is **DENIED** in regard to allegations of the use of excessive force based on § 1983 and in regard to allegations of battery on the part of Defendant Officers Lehman, Little and Walters;

**IT IS FURTHER ORDERED** that the Defendants' Amended Motion for Summary

Judgment is **GRANTED** in regard to the allegation of the use of excessive force based on § 1983 and in regard to the allegation of battery on the part of Defendant Officer Buford;

**IT IS FURTHER ORDERED** that Defendants' Amended Motion for Summary Judgment is **DENIED** in regard to allegations that Defendant Officers Lehman, Little, Walters and Buford failed to prevent the use of excessive force based on § 1983;

**IT IS FURTHER ORDERED** that Defendants' Amended Motion for Summary Judgment is **DENIED** in regard Defendants' claims of qualified immunity and immunity under State law pursuant to official immunity and the public duty rule.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of January, 2006.